IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION NO. 11-132 |
| v. : | |
| : | CIVIL ACTION NO. 16-3274 |
| GENE CORNELL SMITH : | |
| : | |

MEMORANDUM OPINION AND ORDER

Rufe, J.                                                                                                    March 23, 2017

Before the Court is Defendant Gene Cornell Smith's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255.[1] Also pending is Defendant's motion to dismiss the case for lack of jurisdiction.[2] For reasons that follow, the Court finds that the motions lack merit, and will deny them without an evidentiary hearing.[3]

I. PROCEDURAL HISTORY

In affirming Defendant's conviction, the Third Circuit provided the following concise background of this case:

> In September 2007, Smith purchased a warehouse property located in a residential community in northern Philadelphia. Smith hired his co-defendant, Clarence Cole, to renovate the property in preparation for storing cars and creating office space for a vehicle wholesale business. In October 2007, Cole contacted a trained asbestos removal professional to inquire about contracting his services to remove asbestos on the property. After receiving a quote from the contractor, Smith opted not to hire him but instead to leave it to Cole to oversee all renovations of

---

[1] Defendant filed two motions under 28 U.S.C. § 2255 that are identical in substance. Doc. Nos. 156, 158. The Court cites to the more recently filed motion.

[2] Defendant filed three motions to dismiss that are substantially similar. Doc. Nos. 159, 161, 162. The Court considers them as one motion.

[3] "In evaluating a federal habeas petition, a District Court must hold an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Kenley*, 440 F. App'x 78, 80 (3d Cir. 2011) (citing 28 U.S.C. § 2255(b)). If the record as a whole "conclusively show[s] that the prisoner is entitled to no relief," a court is not required to hold an evidentiary hearing. *United States v. Dawson*, 857 F.2d 923, 927 (3d Cir. 1988) (quoting *Gov't of the V.I. v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984)) (internal quotation marks omitted). Here, the Court finds that the record as a whole conclusively establishes that Defendant is entitled to no relief. Accordingly, the Court will deny the motion without an evidentiary hearing.

the property. Cole in turn hired a crew of laborers who, unaware of the presence of asbestos, used sledgehammers to break apart asbestos-coated pipes, piled contaminated materials in an outdoor dumpster, and threw the dismembered pipes from a hole in the wall on the second floor onto a driveway shared between the warehouse and a neighboring church—all without proper safety equipment. As the renovation project progressed, bags of friable asbestos material were strewn about the yard; debris blanketed the property; and loose asbestos and contaminated pieces of metal were swept against the side of the building and left exposed to the elements.

Acting on a tip, the Philadelphia Health Department investigated and informed Smith that his property was out of compliance with federal work practice standards and that he would have to hire a trained professional to remove or contain the asbestos. Work practice standards are procedures published by the Environmental Protection Agency ("EPA") that dictate the steps one must follow to comply with the Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq.*, when dealing with certain hazardous substances, such as asbestos. 42 U.S.C. § 7412(h). Under the CAA, it is a criminal offense for an "owner or operator of a demolition or renovation activity" in a facility like Smith's warehouse to commit a knowing violation of asbestos work practice standards. 42 U.S.C. § 7413(c)(1); 40 C.F.R. § 61.145. Despite multiple warnings from city officials, however, Smith failed to hire a trained professional to remove the asbestos material and failed to follow other asbestos-related work practice standards. *See* 40 C.F.R. §§ 61.145, 61.150. Instead, the renovation continued in a haphazard and dangerous manner under Cole's direction. After months of hazardous conditions and unfulfilled promises by Smith to hire a qualified contractor to bring the property up to standards, the federal government intervened by cleaning up the site using Superfund money.

Smith was indicted and convicted by a jury of his peers of five counts of violating the CAA by illegally removing asbestos, in violation of 42 U.S.C. § 7413(c)(1), and, along with Cole, one count of conspiracy to illegally remove asbestos materials, in violation of 18 U.S.C. § 371. In addition to ordering Smith to pay $451,936.80 in restitution and $600.00 in a special assessment, the District Court imposed a six-level sentencing enhancement for the "ongoing, continuous, or repetitive discharge, release, or emission of a hazardous or toxic substance or pesticide into the environment," U.S.S.G. § 2Q1.2(b)(1)(A), and a two-level enhancement for Smith's role as the "organizer, leader, manager, or supervisor in any criminal activity" involving fewer than five participants, *id.* § 3B1.1(c), for a sentence totaling forty-two months' imprisonment.[4]

Defendant's *pro se* motion under 28 U.S.C. § 2255 raises four grounds for relief, all

based on the alleged ineffectiveness of his trial counsel: (1) counsel failed to research and raise

---

[4] *United States v. Smith*, No. 13-4703, 2015 WL 5829884, 294-95 (3d Cir. Oct. 7, 2015) (footnote omitted).

lack of subject matter jurisdiction; (2) counsel failed to investigate five witnesses that would have provided exculpatory evidence; (3) counsel failed to move to suppress evidence taken from Defendant's property without a warrant, to object to evidence, and to "create a reasonable probability that, but for the errors and omissions[, t]he [outcome] would have been different"; and (4) counsel failed to object during proceedings.  Defendant has also moved to dismiss this case for lack of jurisdiction under the CAA and the Administrative Procedures Act.

## II.  STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner serving a sentence in federal custody may petition the court which imposed the sentence to vacate, set aside, or correct the sentence by asserting that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[5]  Relief under 28 U.S.C. § 2255 is intended to "protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."[6]  A district court must conduct an evidentiary hearing if a petitioner "has alleged facts that, if proved, would entitle him or her to relief and an evidentiary hearing is necessary to establish the truth of those allegations."[7]  "However, bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing."[8]

---

[5] 28 U.S.C. § 2255(a).

[6] *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).

[7] *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991) (citing *Smith v. Freeman,* 892 F.2d 331, 338 (3d. Cir. 1989)).

[8] *Zettlemoyer*, 923 F.2d at 301 (citing *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987)).

Where, as here, a petitioner's claim for relief is based on the ineffectiveness of counsel, the court must determine whether all non-frivolous claims, if true, conclusively fail to establish that counsel was ineffective.[9] The petitioner must demonstrate both that his attorney's performance was deficient and that the deficiency caused him prejudice to establish that counsel was ineffective.[10] An attorney's performance is deficient only if he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[11] Such deficiency prejudices the defense only where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[12]

### III.  DISCUSSION

#### A. Motion to Dismiss for Lack of Jurisdiction

Defendant urges the Court to vacate his conviction because jurisdiction is lacking. He argues that, pursuant to § 7607(b)(1) of the CAA, the United States Court of Appeals for the District of Columbia has exclusive jurisdiction over civil and criminal cases brought under the CAA.[13] However, § 7607(b)(1) has nothing to do with jurisdiction for criminal prosecutions. Defendant was charged in an indictment with violations of federal criminal law, and the Court has jurisdiction pursuant to 18 U.S.C. § 3231, which states: "The district courts of the United

---

[9] *Gov't of the V.I. v. Weatherwax*, 20 F.3d 572, 574 (3d Cir. 1994).

[10] *Strickland v. Washington,* 466 U.S. 668, 694 (1984); *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).

[11] *Strickland*, 466 U.S. at 687.

[12] *Id.* at 694.

[13] Doc. No. 162 at 1.  Under the Clean Air Act, individuals may bring actions to enforce compliance with the Act in certain circumstances.  *See* 42 U.S.C. § 7604.

4

States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."[14]

Defendant also argues that his conviction violates the Administrative Procedure Act ("APA"), which requires that administrative remedies be exhausted prior to judicial review.[15] Defendant appears to argue that the Government failed to exhaust administrative remedies before indicting him, and therefore his conviction under the CAA violated his due process rights. The APA, however, does not apply to criminal prosecutions. The government did not have to exhaust administrative remedies before indicting Defendant, and the Court undisputedly had jurisdiction over his trial.[16] Defendant's motion to dismiss will therefore be denied.

### B.  Motion Under 28 U.S.C. § 2255

#### 1.  Failure to Raise Lack of Jurisdiction

Defendant first argues that trial counsel was ineffective for failing to research and raise the lack of subject matter jurisdiction. This argument misses the mark for the reasons discussed in the preceding paragraphs and trial counsel cannot have been ineffective for failing to raise a meritless argument.[17]

#### 2.  Failure to Investigate Witnesses

Next, Defendant claims trial counsel was ineffective for failing to investigate five "alibi witnesses" who would have provided exculpatory evidence. These witnesses purportedly gave statements to the government, but were not interviewed by Defendant's attorney. First,

---

[14] *See also Smith*, 2015 WL 5829884, at 295 ("The District Court had jurisdiction to hear this case under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).").

[15] Doc. No. 162 at 5. The APA allows aggrieved individuals, in certain situations, to file a civil action in federal court to seek review of a government agency's administrative determinations. *See* 5 U.S.C. § 702.

[16] *See United States v. Starnes*, 583 F.3d 196, 219 (3d Cir. 2009) (affirming conviction and sentence where criminal charges were brought under § 7413(c)(1) of the CAA).

[17] *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

Defendant identifies Elaine Thicken and Keith Fountain, two City of Philadelphia air management supervisors who "were in control of his property," and who "ordered and approved the contractor keystone construction to move material."[18]  Second, Defendant lists "James Alfred and Michael," who apparently stated that Defendant was "unaware of the allege[d] issue."[19]  Third, Defendant lists Ed Collins, a Wachovia Bank manager who apparently provided a written statement that there was "no way that the defendant knew anything about asbestos material and regulation."[20]  According to Defendant, had these witnesses testified at his trial, "there is no way a prudent jury could have found [him] guilty."[21]

Accepting as true Defendant's allegation that trial counsel failed to interview these witnesses, Defendant's ineffective assistance claim fails because he has not alleged that this failure caused him prejudice.  Although Defendant hints at what the testimony of these witnesses would have been in his reply brief, such intimation is not sufficient to warrant an evidentiary hearing or relief under § 2255.  In *Duncan v. Morton*, Defendant moved for relief under § 2255 in part because his counsel failed to interview and present witnesses who would have provided favorable testimony.[22]  In denying Defendant's motion and his request for an evidentiary hearing, the Third Circuit stated:

> Duncan asks this court to speculate both as to whether Sherman would in fact have testified on his behalf and as to what Sherman's testimony would have been. A habeas petitioner "must establish a reasonable probability—one sufficient to undermine our confidence in the outcome—that the jury's verdict would have been different if not for counsel's errors. Such a showing may not be based on mere speculation about what the witnesses [his attorney] failed to locate might have said. . . . Under usual circumstances, we would expect that . . . information

---

[18] Doc. No. 167 at 3.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] 256 F.3d 189, 201 (3d Cir. 2001).

[obtainable through an adequate investigation] would be presented to the habeas court through the testimony of the potential witnesses." In light of Duncan's failure to present any sworn testimony by Sherman, he has failed to establish prejudice as a result of Roberts' alleged failure to interview Sherman.[23]

Here, too, Defendant has failed to provide facts—let alone sworn statements—detailing the testimony the witnesses would have provided. The Court declines to speculate as to what their testimony would have been. Accordingly, the Court cannot conclude that counsel's failure to interview witnesses prejudiced Defendant, or that it is reasonably likely that the proposed testimony would have affected the verdict, especially in light of the overwhelming evidence of guilt presented by the government at trial.[24]

### 3. Failure to Seek Suppression of Asbestos

Defendant next argues that counsel was ineffective for failing to move for the suppression of asbestos material taken from his property without a warrant. Testimony at trial revealed that authorities removed asbestos material from Defendant's property twice without a warrant: first, a City of Philadelphia Asbestos Control Unit employee took samples for testing

---

[23] *Id.* (quoting *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989)) (internal citations omitted); *see also Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) ("Palmer's petition contains no factual matter regarding *Strickland*'s prejudice prong, and his reference to the legal theory of self-defense is precisely the sort of unadorned legal conclusion that, without supporting factual allegations, we have consistently found insufficient to warrant an evidentiary hearing."); *Campbell v. Burris*, 515 F.3d 172, 184 (3d Cir. 2008) ("As we have previously stressed, a showing [of *Strickland* type prejudice] may not be based on mere speculation about what the witnesses [counsel] failed to locate might have said.") (quotation and citation omitted); *Zettlemoyer*, 923 F.2d at 298 ("Zettlemoyer cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense. Rather, he must set forth facts to support his contention.").

[24] *Strickland*, 466 U.S. at 693 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . . [N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."). Among the extensive evidence presented by the government was testimony by a contractor and other witnesses indicating that Defendant knew about the asbestos before overseeing its illegal removal.

from garbage bags outside Defendant's property,[25] and second, EPA employees entered Defendant's property with his consent and took samples for testing.[26]

The first removal was proper because trash left on the curb for collection may properly be seized without a warrant.[27] The second removal was also proper because Defendant consented to the EPA agent's entry onto his property, and removal of the asbestos samples was constitutional under the plain view doctrine. The plain view doctrine allows for the seizure of objects without a warrant if (1) the officer's initial intrusion did not violate the Fourth Amendment, (2) the object is in plain view and its "incriminating character" is apparent, and (3) the officer has a lawful right to access the object.[28] In this case, the EPA agent was properly on Defendant's property because Defendant opened the gate and let him in, the asbestos debris was in plain sight on the ground, and it was proper for the agent, as an EPA enforcement officer, to collect samples.[29] Because the seizures of asbestos samples did not violate Defendant's Fourth Amendment rights, a motion to suppress would have been meritless. Thus, defense counsel was not ineffective for failing to raise this argument.[30]

---

[25] Trial Tr. 1/15/13 at 200:15-201:8.

[26] Trial Tr. 1/16/13 at 70:9-11; 71:19.

[27] *California v. Greenwood*, 486 U.S. 35, 37 (1988) (Fourth Amendment does not prohibit warrantless search and seizure of garbage left for collection).

[28] *United States v. Nicoletti*, 870 F. Supp. 96, 101 (E.D. Pa. 1994) (citing *Horton v. California*, 496 U.S. 128, 135 (1990)).

[29] Trial Tr. 1/16/13 at 70:9-23.

[30] *Sanders*, 165 F.3d at 253. Defendant also argues as part of this claim that counsel was ineffective for failing to object to evidence that was admitted in violation of the Federal Rules of Evidence, and for failing to "create a reasonable probability that, but for the errors and omissions[, t]he [outcome] would have been different." Doc. No. 158 at 7. Defendant fails to provide factual support for these vague assertions. Because the Court is unaware of any evidence admitted at trial to which counsel might have appropriately objected, it cannot determine that counsel was ineffective in this regard. As to Defendant's assertion that counsel did not create a reasonable probability that the outcome of the trial would have been different, counsel cannot be found to be ineffective for failing to persuade the jury to acquit his client.

### 4. Failure to Object

Finally, Defendant claims that trial counsel "stood mute" in court and failed to object to unconstitutional and procedurally barred evidence.[31] Defendant does not elaborate on these arguments. Any allegation that counsel was ineffective because he "stood mute" is belied by the trial transcript, which reflects a number of objections by counsel,[32] as well as thorough direct and cross examinations of witnesses. Regarding evidence, Defendant has not identified the evidence to which counsel should have objected, and to the extent he refers to asbestos evidence, the Court has already addressed that issue. Accordingly, Defendant has not shown that counsel's failure to object prejudiced his defense.

## IV. CONCLUSION

For the reasons stated above, Defendant has conclusively failed to establish that his counsel was ineffective, and his motions will be denied without a hearing. Because Defendant has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.[33]

---

[31] Doc. No. 158 at 8.

[32] *See, e.g.*, Trial Tr. 1/16/13 at 80:14; Trial Tr. 1/17/13 at 115:16; Trial Tr. 1/18/13 at 57:25.

[33] 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).